## Davis and another *vs.* Benton.

Where A. gives to his creditor, for a part of his indebtedness, his note, payable to the defendant, or his order, and the defendant endorses it to the plaintiff, and the maker of the note, when it is given, places in the endorser's hands, property to be by him disposed of, and applied to the payment of the note, and said property is sold by him, and the proceeds thereof received by the endorser, the plaintiff is entitled to recover the amount of said proceeds of said endorser, not exceeding the amount of the note, under the common counts for money had and received; although such note was given to induce the plaintiff to sign a composition deed with the other creditors of A., extending the time of the payment of his debts, said deed having failed to be perfected and to take effect.

This was an action brought by Davis and Aubin, against Nelson K. Benton. The declaration embraced a count upon

a promissory note, executed by Bezaleel Sexton, and endorsed by the defendant, and also the common money counts.

The defendant pleaded the general issue, and the cause was tried at the term of the superior court holden at Hartford, in December, 1855.

On the trial, it was admitted that the note, in the plaintiffs' declaration mentioned, was duly executed by Sexton, and endorsed by the defendant, and at its maturity was duly protested for non-payment, of which the defendant had due notice. It was also proved that, before the making of said note, on the 9th day of June, 1851, Sexton failed in business, largely indebted to sundry persons and firms; and on the 17th day of July, 1851, a large number of his creditors met and agreed upon terms of compromise, which were embodied in a deed of composition of that date.

The plaintiffs offered evidence to prove, that before Sexton's failure, they had sold to him a large quantity of wool, on credit, and had received therefor a bill of exchange, drawn by Phelps, in favor of one Holkins, upon, and accepted by, Sexton, for about the sum of $4,745, and endorsed by said Holkins to the plaintiffs; that the plaintiffs had endorsed, and procured said bill to be discounted for their accommodation, by a bank in Boston; that said bill, at the time of said failure, was not due, but that the plaintiffs, hearing of said failure, took up and held said bill until its maturity, and placed it in the hands of one Scoville, for collection.

The defendants offered evidence to prove that, before the expiration of the time in said deed limited for the execution thereof, Sexton applied to Scoville, and requested him to sign it, which he refused to do, but proposed that he would sign it, and give up said bill, in consideration of the note in suit; and that, in order to obtain Scoville's signature, and thereby to enable him to procure the execution of the deed by his other creditors, Sexton assented to said proposition, and that said note was made, and by the defendant, for said Sexton's accommodation, endorsed, and delivered to Sco-

ville; and that, in consideration thereof, Scoville executed said deed, and gave up said bill, that this was intended to be, and was, a secret arrangement, made for the purpose of enabling Sexton to procure the execution of said deed by some of his other creditors, and was known and understood by Scoville so to be; and that after the execution of said deed by Scoville, and within the time limited in said deed for its execution, other creditors of Sexton executed the same; although it was admitted that said deed finally failed to take effect, by reason of the failure of Sexton to comply with some of the conditions contained therein.

The defendant also claimed that said note, after its delivery, was assigned, and delivered by Scoville to the plaintiffs, and that the plaintiffs, before and at the time of such assignment and transfer, were fully informed of the arrangement between Scoville and Sexton.

The plaintiffs offered evidence to prove, that no such arrangement, either open or secret, was ever made, but that the note was given for the agreed price of said bill, and for no other consideration whatever, and without any agreement, or expectation, that Scoville should at any time execute said deed; but that, after delivery of the note to Scoville, the attorney of Sexton requested Scoville to execute said deed, and represented to him that he could then execute it without impropriety, and without doing any wrong or injury to himself or others, while it might be of some service to Sexton to be able to show the name of Scoville affixed to said deed; and that Scoville, relying upon these representations, signed said deed as an act of kindness to Sexton, but without any consideration whatever therefor, and that the execution of the deed was entirely independent of the sale of the bill, and the giving of the note, and had no connection therewith.

The plaintiffs further offered evidence to prove, that if Scoville had executed the deed in consideration of said note, as the defendant claimed; that he had so executed it without

their knowledge or consent, and that they had received said note from Scoville as their agent, and not as his assignee; and that at the time they received it, they were informed by him, and believed, that it was given and endorsed in consideration of a *bona fide* sale of said bill, and upon no other consideration; and that they had not, at any time, any notice whatever, that it was given upon any other consideration, and that until long afterward, they had no knowledge of the execution of said deed by Scoville.

The plaintiffs offered evidence to prove, that after the making of the note and before the commencement of the present suit, in order to provide for the payment of the note, Sexton had placed in the defendant's hands, a large amount of property to sell, the proceeds thereof to be applied to the payment of the note, and that the defendant sold said property and received the money therefor, and held it for that purpose; and they requested the court to charge the jury, that, if they should find as the plaintiffs claimed, then they ought to find for the plaintiffs, on the count for money had and received, to recover the money so held by the defendant, not exceeding the amount of the note, although they might also find that the note was originally given and endorsed, in the manner, upon the agreement, and for the consideration, claimed by the defendant; and although they should find that the plaintiffs had full notice thereof, at the time they received the note from Scoville.

The defendant denied that any money, property, or funds, had ever been placed in his hands by Sexton, for the payment of the note, or that he ever held any property or money for that purpose, and he requested the court to charge the jury, that, if they should find that said note was made, endorsed, and delivered in the manner claimed by him, the transaction was a fraud upon the other creditors and upon Sexton, and that therefore the plaintiffs were not entitled to recover on the count for money had and received, even though they should find that Sexton had placed said property in the

defendant's hands, to be sold for the payment of said note, and that the defendant received the same for that purpose, and had sold said property and received the money therefor, and held the same, at the time of the commencement of the suit, as claimed by the plaintiffs.

The court charged the jury, upon this point, in conformity to the claim of the plaintiffs; and the jury having returned a verdict for the plaintiffs, the defendant moved for a new trial.

*Hungerford & Cone* and *Wright*, in support of the motion.

I. If the note in suit, as the defendant claims, was made by Sexton and endorsed by the defendant, as an additional benefit, and further security for the payment of Scoville's debt than that provided for the other creditors in the deed of composition, it was void in its inception, both as against Sexton and the defendant, as a fraud on the other creditors, and a moral duress upon Sexton and his friends. *Leicester et al.* v. *Rose*, 4 East., 372. *Steinman* v. *Magnus*, 11 East., 390. *Case* v. *Gerrish*, 15 Pick., 50.

II. If Sexton had actually paid this money to the plaintiffs to induce them to sign the composition deed; or if he had been compelled to pay this note by a *bona fide* holder, he might, in either case, recover it as money paid by compulsion. If the plaintiffs can recover in this case, Sexton may have his action to recover it back. *Smith* v. *Cuff*, 6 M. & S., 160. *Towney* v *Bourdieu*, 2 Doug., 472. *Smith* v. *Bromley*, 2 Doug., 697. *Horton* v. *Riley*, 11 M. & W., 492. *Bradshaw* v. *Bradshaw*, 9 M. & W., 29. If the note, as claimed by the defendant, is fraudulent and void in its inception, everything connected with it is illegal, and the court will no more aid the plaintiffs to recover on the common counts, than on the note itself. *Langton et al.* v. *Hughes et al.*, 1 M. & S. 593. *Philadelphia Loan Co.*, v. *Towner*, 13 Conn. R., 249. *Phalen* v. *Clark*, 19 Conn. R., 421. If a recovery can

be had, it is only by virtue of an implied promise by the defendant to pay ; and the only consideration of the implied promise is the void note. The note is distinctly recognized as the consideration of the implied assumpsit, and the plaintiffs' claim upon Benton, is traced through the fraudulent and void note. Money, deposited to secure a wager on the event of an election, cannot be recovered by the winner. *Wheeler* v. *Spencer*, 15 Conn. R., 28. *Hastelow* v. *Jackson*, 8 B. & Cres., 221. Nor money deposited as a bribe to influence a judge in his official character.

*Chapman & Drake*, and *Fellowes*, against the motion.

ELLSWORTH, J. We are not able to discover any error in the ruling of the judge below.

The motion shows, that, at the time of the failure of Bezaleel Sexton, on the 9th day of June, 1851, he was indebted to the plaintiffs, to the amount of the note in question, for wool before that time sold. At the time of the sale, he gave them a bill of exchange, which is dishonored and remains unpaid. Sexton, having numerous creditors, they undertook to compromise their respective debts, and according to the defendant's claim, one Scoville, who had the dishonored bill in his hands, in some capacity or other, was, it is said, present and active in bringing about the compromise, as the representative of the plaintiffs' debt. It does not appear that Sexton was able to fulfil the compromise on his part, or that it ever took effect, as to any of the creditors. However, before the deed, designed as the instrument of compromise, was executed by Scoville, it is said he refused to sign it, until Sexton, by a secret promise, gave him an advantage over the other creditors, securing to him an earlier payment of the seventy-five cents on the dollar, which the creditors had agreed to take, than to the others. The note is said to have been given to carry out this preference, or favoritism, with the full

knowledge and concurrence of the plaintiffs. This is claimed to render the note fraudulent and void, as unfair and unequal.

We have no occasion to decide what is the precise principle of law, contended for by the defendant, nor whether any principle of the kind could benefit the defendant, because we are of the opinion that the defendant, under the circumstances, may not avail himself of such a defence. The maker of the note had a right to have it paid, if it was his pleasure, even if he could have repudiated it. Sexton had never paid the plaintiffs for the wool they sold him. He owed the protested bill of exchange on the note given Scoville, and in order to take it up, having placed funds in the hands of the defendant to pay it, it would be strange indeed if the defendant could refuse to apply them as directed. Whether the defendant is not estopped from making such a defence to the note, we need not say, for he is liable on the common counts, for money had and received.

We do not advise a new trial.

In this opinion, the other judges, STORRS and HINMAN, concurred.

New trial not to be granted.